## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**GARY HARRISON,**
    **Petitioner,**

**v.**                            **Case No. 3:18cv2100-RV/CAS**

**MARK S. INCH, Secretary,**
**Florida Department of Corrections,**
    **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On or about September 13, 2018, Petitioner Gary Harrison, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On February 21, 2019, Respondent filed an answer and exhibits. ECF No. 10. Petitioner has filed a reply, with attachments. ECF No. 13.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this amended § 2254 petition should be denied.

## Background and Procedural History

On September 4, 2013, a grand jury in Escambia County Circuit
Court, presented an indictment charging Petitioner Gary Harrison with first
degree murder with a weapon, in violation of sections 782.04, 775.087,
Florida Statutes, involving victim Tyler Hinkle, or murder while engaged in
the perpetration or attempt to perpetrate a robbery, occurring on or about
September 24, 2011.    Ex. A at 1-2.[1]    Harrison proceeded to a jury trial on
July 15, 2014, during which several witnesses testified.    Ex. B.    Harrison
did not testify during the trial.    *Id*. at 168-70.    The jury returned a verdict
finding him guilty as charged in the indictment.    *Id.* at 211-13; Ex. A at 95.
At a hearing held August 22, 2014, the judge adjudicated Harrison guilty
and sentenced him to life in prison without eligibility for parole.    Ex. A at
129 (transcript), 133-39 (Order of Judgment and Sentence).

Harrison appealed his judgment and sentence to the First District
Court of Appeal (First DCA), assigned case number 1D14-4308.    *See* Exs.
A at 151 (Notice of Appeal), D (Initial Brief), E (Answer Brief).    On January

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's
answer, ECF No. 10.

Case No. 3:18cv2100-RV/CAS

21, 2016, the First DCA per curiam affirmed the case without a written opinion.   Ex. F; <u>Harrison v. State</u>, 183 So. 3d 353 (Fla. 1st DCA 2016) (table).

On April 12, 2016, Harrison filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. G.   He subsequently filed an amended Rule 3.850 motion.   Ex. H.   By order dated September 17, 2017, the state post-conviction trial court summarily denied relief.   Ex. I at 1-10 (exclusive of attachments).   Harrison evidently did not appeal this order.   *See* ECF No. 10 at 4.

On October 6, 2016, Harrison filed a Petition Alleging Ineffective Assistance of Appellate Counsel in the First DCA, assigned case number 1D16-4585.   Ex. J.   The State filed a response, Ex. K, and Harrison filed a reply, Ex. L.   On March 29, 2017, the First DCA denied the petition without a written opinion.   Ex. M; <u>Harrison v. State</u>, 224 So. 3d 213 (Fla. 1st DCA 2017).

On January 23, 2018, Harrison filed another Petition Alleging Ineffective Assistance of Appellate Counsel in the First DCA, assigned case number 1D18-410.   Exs. N (Petition), O (Appendix).   On March 26,

2018, the First DCA denied the petition without a written opinion.   Ex. P;

Harrison v. State, 241 So. 3d 931 (Fla. 1st DCA 2018).

As indicated above, on or about September 13, 2018, Harrison filed a

§ 2254 petition in this Court.   ECF No. 1.   He raises four grounds:

(1) **State Court Error – Prosecutor's Closing Argument**:
"The trial court erred in abusing its discretion by allowing,
and the district appellate court erred in affirming its
decisions in denying Petitioner post-relief where the state
prosecutor committed governmental misconduct by
providing binding, improper and infair prejudicial remarks to
jury in closing arguments calculated to reach a wrongful
conviction."   *Id*. at 6.

(2) **State Court Error – Due Process/Defective Verdict Form**:
"The district appellate court erred in denying Petitioners post
relief on jury's defective general verdict form, which cites:
GUILTY AS CHARGED IN THE INDICTMENT on
alternative knife and or other sharp instrument §775.087
Fla. Stat. the Courts decisions were and are contrary to
USCA Constitutional Amendment 6, 14 and this error
violated Petitioners due process of law."   *Id*. at 14.

(3) **State Court Error – Defective Indictment**:   "The trial court
erred denying Petitioners 3.850 motion and district appellate
court erred in denying Petitioners 9.141 petition seeking
post relief on State's fundamentally defective, invalid State's
indictment on improperly charged alternative robbery and/or
attempted robbery offenses that lacked key essential
elements, statute section violations, and specific subsection
violations."   *Id*. at 16.

(4) **State Court Error – Denial of JOA**:   "The state trial and

district appellate courts erred in its decisions in denying
Petitioners JOA on premeditated murder in post relief
proceedings, and the State failed to prove premeditation,
and no jury instructions should have been given on
premeditation and jury's general verdict form is defective
and both state courts' decisions were, and are contrary to
USCA constitutional amendment 14, statutes, codes, and
rulings, and these errors violated Petitioner's due process of
law." *Id*. at 19.

Respondent filed an answer, with exhibits.   ECF No. 10.   Harrison has

filed a reply.   ECF No. 13.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not
be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of
the claim –

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in

the State court proceeding.

28 U.S.C. § 2254(d).    *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).    "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"    Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."    *Id*.

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.    This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.    Second, the defendant must show that the deficient performance prejudiced the defense.    This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).    To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."    *Id.* at 688.    To

demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1:   State Court Error – Prosecutor's Closing Argument

In his first ground, Petitioner Harrison asserts the state courts erred in denying him post-conviction relief on his claim of prosecutorial misconduct in closing argument. ECF No. 1 at 6-12. Harrison raises sub-claims in this ground:   (a) the prosecutor misstated the facts and made improper

insinuations and assertions calculated to mislead the jury, *id*. at 6-7; (b) the

prosecutor presented contradictory alternative robbery theories, robbery

and attempted robbery, *id*. at 7-8; (c) the prosecutor made "unfair,

prejudicial, discriminatory, inflammatory remarks" by telling the jury "what

we do have is the robbery and murder of Tyler Hinkle, with this defendants

name, and this defendants face written all over it," *id*. at 9; and (d) the

prosecutor improperly bolstered witnesses and "knew or should have

known from pre trial discovery evidence, that no money or anything was

taken from the victim before or after homicide was committed," *id*. at 10.

Harrison raised the first three of these sub-claims in the fifth ground in

his amended Rule 3.850 motion.   *See* Ex. H at 29-33.   The state post-

conviction court summarily denied the claims, making the following

findings:

> Defendant claims the prosecutor made improper and
> prejudicial comments and presented contradictory theories of
> guilt during closing arguments.   Claims of such prosecutorial
> misconduct are procedurally barred.   *See* Jennings v. State,
> 123 So. 3d 1101, 1122 (Fla. 2013).

Ex. I at 6-7.

As Respondent indicates, however, Harrison did not complete one

round of review in the state courts because he did not appeal the denial of

his motion.    *See* ECF No. 10 at 31.    Harrison has not demonstrated cause

for or prejudice resulting from this procedural default.    In his reply, he

indicates, in pertinent part, the "'State' is correct that errors argued in his

3.850 post-motion were not exhausted," he presented and exhausted all his

§ 2254 grounds in his second Petition Alleging Ineffective Assistance of

Appellate Counsel, number 1D18-410, and the "reason why some other

issues are presented was to show only this court what took place at trial to

give court a thorough review of 'Harrison's' case."    ECF No. 13 at 3, 5.

Assuming the ground was exhausted, the state post-conviction court

properly found this claim procedurally barred in a Rule 3.850 proceeding.

Indeed, the Florida Supreme Court has concluded that "substantive claims

of prosecutorial misconduct could and should have been raised on direct

appeal and thus are procedurally barred from consideration in a

postconviction motion."    Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003).

This constitutes an independent and adequate state ground that precludes

federal habeas consideration of the claim.    *See, e.g.*, LeCroy v. Sec'y, Fla.

Dep't of Corr., 421 F.3d 1237, 1260-62 (11th Cir. 2005); *see also, e.g.*,

Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (concluding that

state appellate court's "per curiam affirmance of the trial court's ruling

explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts").

Moreover, in Florida, both the State and the defense have wide latitude in closing arguments.    *See, e.g.*, <u>Ford v. State</u>, 802 So. 2d 1121, 1129 (Fla. 2001).    The prosecutor is "allowed to argue reasonable inferences form the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." <u>Miller v. State</u>, 926 So. 2d 1243, 1254-55 (Fla. 2006).    None of the unobjected-to comments Harrison references appears improper.    *See* Ex. B at 179-85.    *Cf., e.g.*, <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (holding that prosecutor's comments "undoubtedly were improper," but that was not enough for habeas corpus relief as the question was whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

In the fourth sub-claim of this ground, Harrison challenges the prosecutor's use of statements and testimony by Deputy Christian Coad and Ashlen Harrison.    ECF No. 1 at 10-12.    With regard to alleged untrustworthy statements of Ashlen Harrison, Petitioner raised similar

claims in the sixth ground of his amended Rule 3.850 motion, in the context

of and included with claims of ineffective assistance of trial counsel.   *See*

Ex. H at 33-39.   The state post-conviction court denied those claims,

making the following findings:

> Defendant claims counsel was ineffective for failing to file any preliminary motions before allowing the State to introduce the statements of Ashlen Harrison at trial.   Defendant alleges at trial and in a deposition, Harrison testified Defendant told him he stuck the pizza guy with a knife for $80 and cocaine, and that Defendant told him he took trails on the night of the murder.   Defendant further alleges Harrison's statements were made nearly two years after the offense was committed and after Harrison's arrest and plea negotiations with the State for an 18 month prison sentence in exchange for his testimony. Defendant contends counsel should have filed a motion to exclude Harrison's statements and to strike him as an untrustworthy and unreliable witness because Harrison's motivation for his testimony was to curry favor, Harrison's statement of robbery for $80 was in direct conflict with evidence showing no money was taken from the victim, and Harrison had learned about the trails from people talking about it in jail. Defendant also disputes having made such statements to Harrison.   Defendant also contends counsel should have objected to the statements or impeached Harrison with contradictory evidence or other statements made by Harrison prior to trial.

> At trial, Harrison testified Defendant told him he stuck the victim with a knife over $80 and crack cocaine, and Defendant used a trial that lead from their grandfather's house to Domino's.   (Exhibit B, pp. 122-123.)   Harrison also testified he had entered a plea to a third degree felony in another case and was hoping for an 18 month deal but had not been promised any particular sentence.   (Exhibit B, pp. 119-120, 128-129.)

Trial counsel brought out that Harrison had stated in his deposition that he was getting an 18 month deal.   (Exhibit B, p. 127.)   On cross examination, trial counsel asked Harrison about his deposition testimony, in which Harrison stated he knew about the trails because other people were talking about it in jail and that is what the investigator said.   (Exhibit B, p. 127.) On redirect, Harrison testified he was familiar with the trials in the area, and did not know Defendant took the trials until after Defendant told him.   (Exhibit B, p. 128.)   Trial counsel also elicited testimony from Harrison that he and his brother were not close, he spoke to Defendant about the incident in June or July 2012, and Harrison never told the police what Defendant told him until Harrison was back in jail a year later.   (Exhibit B, pp. 124-125.)

Defendant fails to state sufficient grounds for excluding Harrison's testimony, as Harrison's credibility and the truth of his testimony were issues for the jury to decide.   Otherwise, trial counsel elicited testimony from Harrison attacking his credibility.

Defendant also contends the State failed to correct Harrison's false statements and therefore allowed perjured testimony at trial.   However, evidence of prior inconsistent statements is insufficient to show the State used perjured testimony.   See Hernandez v. State, 180 So. 3d 978, 994 (Fla. 2015); Ferguson v. State, 101 So. 3d 895, 897 (Fla. 4th DCA 2012).   Harrison's testimony that $80 was taken is not necessarily contradicted by other evidence that cash was found on the victim.   Defendant's contentions that Harrison's trial statements are perjured are conclusory, and any contention the State knew his testimony was false is speculative.

Ex. I at 7-8.   As explained above, however, Harrison did not complete one

round of review in the state courts because he did not appeal the denial of

his motion, and he has not demonstrated cause for or prejudice resulting

from this procedural default.

Even if considered, the record supports the state post-conviction court's findings.   *See* Ex. B at 119-20, 122-25, 127-29.   Further, federal habeas courts do not review State evidentiary rulings unless the alleged error is of such magnitude as to render the trial fundamentally unfair.   *See* Estelle v. McGuire, 502 U.S. 62, 71 (1991).   "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).

With regard to the testimony of Deputy Coad about statements the victim made, Harrison raised similar claims in the seventh ground of his amended Rule 3.850 motion, again in the context of and included with claims of ineffective assistance of trial counsel.   *See* Ex. H at 40-44.   The state post-conviction court denied those claims, making the following findings:

> Defendant claims counsel was ineffective for failing to object to the admission of the victim's dying declaration or excited utterance made to Coad that he was robbed by a black male.   Defendant contends counsel should have moved for a pretrial hearing for a determination as to reliability of the statements.   He refers to sections 90.901 and 90.801 through

90.804, Florida Statutes, as bases for authentication. Specifically, Defendant asserts the declaration must have been made while the victim, not Coad, thought the victim's death was imminent.

Section 90.901 does not apply to eyewitness testimony but rather applies to evidence such as documents or other items where it must be shown they are what they are purported to be.   *See* <u>Vilsaint v. State</u>, 127 So. 3d 647, 649-50 (Fla. 4th DCA 2013); <u>Dollar v. State</u>, 685 So. 2d 901, 903 (Fla. 5th DCA 1996).

Sections 90.801 through 90.804 include the hearsay rule and exceptions.   Section 90.804(2)(b) applies to dying declarations and requires that the declarant knew or believed he was dying.   *See* <u>Davis v. State</u>, 207 So. 3d 177, 205 (Fla. 2016); <u>Williams v. State</u>, 967 So. 2d 735, 749 (Fla. 2007). Defendant fails to allege facts upon which counsel could argue there could be no proper predicate for the introduction of the victim's statements.

Defendant also mentions excited utterances, which fall under the hearsay exception found in section 90.803(2). Defendant fails to allege facts supporting the exclusion of the victim's statements under this statute.   *See* 967 So. 2d at 748-749.

Also, Defendant asserts Coad's testimony as to the statements made by the victim was inconsistent with statements Coad made to Baggett and was in direct conflict with the testimony of Pate.   Conflicts in the evidence are for the jury to resolve.   *See* <u>Sapp v. State</u>, 913 So. 2d 1220, 1223 (Fla. 4th DCA 2005).   Therefore, Defendant fails to state sufficient grounds for moving to exclude or object to the introduction of the victim's statements.

Defendant also asserts counsel should have impeached Coad based on Baggett's report.   This part of his claim fails to

> establish a basis for excluding the victim's statements.
> Moreover, as stated previously, conflicts in the evidence are
> matters for the jury to resolve.   There is no reasonable
> probability the victim's statements would have been excluded
> due to a conflict in the evidence.

Ex. I at 8-9.   Again, however, Harrison did not complete one round of review in the state courts because he did not appeal the denial of his motion, and he has not demonstrated cause for or prejudice resulting from this procedural default.

Even if considered, the record and Florida law support the state post-conviction court's findings.   Ex. B at 53-55; *see* §§ 90.803(2) (excited utterance), 90.804(2)(b), Fla. Stat. (2010) (dying declaration).   *See, e.g*, Pope v. State, 679 So. 2d 710, 713 (Fla. 1996).   Again, federal habeas relief does not lie for state court evidentiary rulings unless the alleged error is of such magnitude as to render the trial fundamentally unfair.   *See* Estelle, 502 U.S. at 71; Carrizales, 699 F.2d at 1055.   Moreover, although not the basis of the challenge here, the admission of a mortally wounded victim's statements to police officers, in the context of meeting an ongoing emergency, does not violate the Confrontation Clause of the U.S. Constitution.   *See* Michigan v. Bryant, 562 U.S. 344, 348 (2011) (holding admission of statements victim made to officers who discovered him

mortally wounded in gas station parking lot not barred by Confrontation

Clause where "the circumstances of the interaction between [the victim]

and the police objectively indicate that the 'primary purpose of the

interrogation' was 'to enable police assistance to meet an ongoing

emergency'" and, therefore, victim's "identification and description of the

shooter and the location of the shooting were not testimonial statements").

Based on the foregoing, Petitioner Harrison has not shown that, even

if considered, the state courts' rejection of this ground involved an

unreasonable application of clearly established federal law or that it was

based on an unreasonable determination of the facts.   *See* 28 U.S.C.

§ 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 2</u>:   State Court Error – Due Process/Defective Verdict Form

In his second ground, Petitioner Harrison asserts the state appellate

court erred in denying him relief for the "jury's defective general verdict

form" and explains that form indicates, as the option picked by the jury,

"Guilty of First Degree Murder, as charged in the Indictment," Ex. A at 95,

but the indictment charged him with committing the offense with "a knife

and/or other sharp instrument," ECF No. 1 at 14.   He explains that "[w]hen

a weapon is charged or alleged as being used in the commission of other

crimes, the jury must give a specific finding of guilt on its verdict form in

writing of showing petitioner carried and used weapons during commission

of committing other crimes," but here the "jury's general verdict form fails to

reflect this, and this is reversible error, plain error, prejudicial error and/or

fundamental error." *Id*.

Harrison raised this claim in the fourth ground of his amended Rule

3.850 motion. *See* Ex. H at 28-29. The state post-conviction court

summarily denied the ground, making the following findings:

> Defendant claims the trial court erred in denying
> Defendant's motion for judgment of acquittal on premeditation.
> Defendant alleges there was only circumstantial evidence of
> premeditation. He also objects to the verdict, which does not
> specify whether his conviction was based on premeditation or
> the felony offense. These claims are the types that could or
> should have been raised at appeal or on direct appeal and are
> therefore procedurally barred.

Ex. I at 6. Harrison did not complete one round of review in the state

courts, however, as he did not appeal the denial of his motion. He has not

demonstrated cause for or prejudice resulting from this procedural default.

Even assuming this ground was exhausted, the state post-conviction

court properly concluded this claim should have been raised on direct

appeal. This constitutes an independent and adequate state ground that

precludes federal habeas consideration of the claim. *See, e.g.*, LeCroy,

421 F.3d at 1260; <u>Bertoletti v. Dugger</u>, 883 F.2d 1503, 1523 (11th Cir. 1989) (explaining Florida Supreme Court imposed procedural bar where appellate counsel did not raise point on appeal regarding general verdict).

Respondent indicates this claim is one alleging ineffective assistance of appellate counsel and Harrison exhausted it by raising it as the second ground in the habeas petition he filed in the First DCA, which that court denied on the merits.   ECF No. 10 at 42; *see* Ex. N at 16-23, Ex. P.   The state court's ruling is entitled to deference and review is limited to the record before the state court.   *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 563 U.S. at 187-88; <u>Richter</u>, 562 U.S. at 99-103; <u>Wright</u>, 278 F.3d at 1255.

The record supports the state court ruling.   Harrison was charged with first degree murder under two theories:   premeditated murder or felony murder.   Ex. A at 1.   As Respondent indicates, the U.S. Supreme Court has held that the U.S. Constitution does not require separate verdict forms for alternative theories of premeditated and felony murder.   <u>Schad v. Arizona</u>, 501 U.S. 624, 645 (1991); *see* ECF No. 10 at 43.   Similarly, the Florida Supreme Court has explained, "It is well established that an indictment which charges premeditated murder permits the State to prosecute under both the premeditated and felony murder theories."

Parker v. State, 904 So. 2d 370, 382-83 (Fla. 2005); *accord, e.g.*, Mansfield v. State, 911 So. 2d 1160, 1178-79 (Fla. 2005).   Further, a general verdict form, which does not specify the theory under which the jury finds a defendant guilty, is permissible in such a prosecution.   *See, e.g.*, Jordan v. State, 694 So. 2d 708, 712-13 (Fla. 1997).

During the trial, the State presented sufficient evidence that Harrison stabbed the victim, causing the victim's death, as explained in greater detail in the analysis of Ground 4, *infra*.   The element of the use of a weapon – specifically "a knife and/or other sharp instrument" – was alleged in the indictment and the jury found him guilty as charged.   Ex. A at 1-2, 95; Ex. B at 211-13.   Defense counsel did not object to the verdict form.   *See* Ex. B at 174-75.   Thus, any issues regarding the form were not preserved. "Appellate counsel cannot be deemed ineffective for failing to raise a claim which 'would in all probability' have been without merit or would have been procedurally barred on direct appeal."   Mansfield v. State, 911 So. 2d 1160, 1178 (Fla. 2005) (quoting Williamson v. Dugger, 651 So. 2d 84, 86 (Fla. 1994)).   *See, e.g.*, Diaz v. Sec'y, Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective

for failure to raise a meritless argument.").   Further, this issue does not appear to be one of fundamental error.   *See, e.g.*, <u>Spencer v. State</u>, 842 So. 2d 52, 74 (Fla. 2003) ("In order for an error to be fundamental and justify reversal in the absence of a timely objection, 'the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" (quoting <u>Brown v. State</u>, 124 So. 2d 481, 484 (Fla. 1960))).

Petitioner Harrison has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 3</u>:   State Court Error – Defective Indictment

In his third ground, Petitioner Harrison asserts the state courts erred in denying his request for post-conviction relief on the basis that the State's "fundamentally, defective, invalid . . . indictment . . . improperly charged alternative robbery and/or attempted robbery offenses [and it] lacked key essential elements, statute section violations, and specific subsection violations."   ECF No. 1 at 16.   He also indicates:

> The courts decision was contrary to USCA constitutional
> amendment 5, 6, 14 and many other state and federal
> constitutional laws, treaties, codes, statutes and rules.   These
> errors violated Petitioner due process of law.   See Criminal
> Case #2013-CF-0045001, 3.850 motion dated 5.30.2017
> ground one, see also reviewing judge response to 3.850 motion
> dated 9.18.2017, Ground One pg. 2 of 10 line # 17, 18 and
> 1D18-0410 Appendix Section A pg. 4.

*Id*.   He asserts the indictment "is fundamentally defective and invalid

where states indictment on [alternative] attempted robbery offense lacked

key essential elements where indictment failed to allege what petitioner

attempted to take from victim of [sic] failed to allege that anything of value

or money was attempted to atke [sic] from victim by petitioner."   *Id*.

Respondent indicates that Harrison seems to raise claims of

ineffective assistance of trial counsel for not objecting in the trial court to

the allegedly defective indictment and ineffective assistance of appellate

counsel for not raising the error on direct appeal.   ECF No. 10 at 46.

Respondent asserts Harrison did not raise these claims in his Rule 3.850

motion; rather, in that motion, he presented the issue as one of trial court

error.   *See id*. at 47.   Thus, according to Respondent, Harrison has not

exhausted this ground, at least as to the portion alleging ineffective

assistance of trial counsel.   *Id*.   Respondent indicates that, to the extent

Harrison's claim concerns ineffective assistance of appellate counsel, he

did exhaust his state court remedies.   *Id*.

A review of the record reflects that, in his Rule 3.850 motion, Harrison

presented the following as his first claim:

> Counsel was ineffective in failing to object to the trial
> courts erroneous, fault, improper jury instructions given on both
> alternative underlying uncharged attempted robbery, and
> robbery offenses alleged in the indictment, where "essential
> elements," and specific "statue sections" were omitted.
> Counsel errors violated defendants; U.S.C.A. Const. Amend.
> 6th, 14th, rights to effective representation, and "due process"
> of law pursuant to:   Strickland v. Washington, 466 U.S. 668,
> 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Ex. H at 11.   The state post-conviction trial court summarily denied the

ground, making the following findings:

> Defendant claims counsel was ineffective for failing to
> object to the jury instructions on attempted robbery and
> robbery.   He alleges the robbery offenses were not properly
> charged in the indictment, which did not allege all of the
> essential elements and the specific statute sections of robbery.
>
> Defendant was charged with premeditated murder or
> murder while engaged in the perpetration or attempt to
> perpetrate a robbery.   (Exhibit A.)   He was not charged
> separately with a robbery.   At trial, there was evidence the
> victim was stabbed and robbed of money by the perpetrator.
> In denying the motion for judgment of acquittal, the trial court
> noted a witness testified Defendant got $80 from the victim.
> (Exhibit B, p. 166.)   The offenses of robbery and attempted
> robbery were defined by the trial court during the jury
> instructions.   (Exhibit B, p. 189.)   These definitions given by
> the trial court include the essential elements of the offenses as
> provided in sections 812.13 and 777.04, Florida Statutes.

It was not necessary for Defendant to be separately charged with robbery in order to charge him with felony murder. *See* Crain v. State, 894 So. 2d 59, 69 (Fla. 2004). It was also not necessary to instruct on the elements of robbery with the same particularity as would be required if Defendant were charged with robbery. *Id.* The definition provided in the jury instructions was sufficiently definite to assure Defendant a fair trial. *Id.* Also, the evidence was sufficient to give the robbery instructions. *See* Bogle v. State, 213 So. 3d 833, 853 (Fla. 2017). There is no reasonable probability that an objection by counsel would have been upheld.

To the extent Defendant challenges the sufficiency of the evidence to support a finding of robbery, such claims should be raised at trial or on direct appeal and are not cognizable in a rule 3.850 motion.

Ex. H at 2-3. Harrison did not appeal this order.

In his habeas petition filed in the First DCA, Harrison raised the

following as the second claim:

Appellate counsel was ineffective in failing to allege on direct appeal, where jury's verdict cited guilty as charged in indictment on [alternative]: "knife and/or other sharp instruments § 775.087, Fla. Stat.," was inadequate, and defective. Counsel's inactions violated Petitioner's due process of law to effective representation. USCA Const. Amend. 6, 14; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 64 (1984).

Ex. at 16.

To the extent Harrison raises here a claim of state court error, he has

not exhausted such claim. To the extent he raises claims of ineffective

assistance of trial and appellate counsel, such does not warrant relief.

In particular, the record supports the post-conviction trial court's determination that Harrison was charged with premeditated murder or murder while engaged in the perpetration or attempt to perpetrate a robbery, and he was not separately charged with robbery.   Specifically, the indictment provides:

> COUNT 1:   THE GRAND JURORS OF THE STATE OF FLORIDA, LAWFULLY SELECTED, IMPANELED AND SWORN, INQUIRING IN AND FOR THE BODY OF THE COUNTY OF ESCAMBIA UPON THEIR OATHS AS GRAND JURORS, DO PRESENT THAT **GARY HARRISON, on or about September 24, 2011**, at and in Escambia County, Florida, did unlawfully from a premeditated design to effect the death of a human being, to-wit:   **Tyler Hinkle**, or while engaged in the perpetration of or an attempt to perpetrate a felony, to wit:   **Robbery**, did kill and murder said **Tyler Hinkle**, by stabbing him, and in the process thereof did use, carry, or possess a weapon, to wit:   a knife and/or other sharp instrument, in violation of Section 782.04, 775.087, Florida Statutes.

Ex. A at 1.   The indictment specified, in addition to premeditated murder, felony murder with the underlying felony (robbery) and cited section 782.04, Florida Statutes, which lists in subsection (1)(a)2.d. robbery as one of the felonies on which the State may rely to establish first-degree murder. Thus, Harrison was given proper notice of the first degree murder charge against him under alternative theories of premeditated and felony murder.

*See* Crain v. State, 894 So. 2d 59, 69 (Fla. 2004) (affirming convictions of first-degree murder and kidnapping as "State presented legally sufficient evidence of first-degree felony murder based on kidnapping with intent to inflict bodily harm" and explaining "it is well settled that if an indictment charges premeditated murder, the State need not charge felony murder or the particular underlying felony to receive a felony murder instruction" and "in felony murder situations the notice required by due process of law and supplied by the charging document as to other offenses is provided instead by our State's reciprocal discovery rules and by the enumeration in section 782.04(1)(a)2., Florida Statutes (2003), of the felonies on which the State may rely to establish first-degree felony murder"). *Cf*. Weatherspoon v. State, 214 So. 3d 578, 586 (Fla. 2017) (explaining that "[b]ecause the State can prove premeditation by either showing direct premeditation or imputed premeditation through the underlying felony, charging premeditated murder and citing that statute[, section 782.04,] is enough to put a defendant on notice that the State might pursue the theory of felony murder"); Gudinas v. State, 693 So. 2d 953, 964 (Fla. 1997) ("We have repeatedly rejected claims that it is error for a trial court to allow the State to pursue a felony murder theory when the indictment gave no notice of the theory."). Given

this, Harrison cannot show that trial counsel was deficient for not objecting to the indictment as any such objection would be meritless.   *See, e.g.*, Freeman v. Att'y Gen'l, State of Fla., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . .").

Similarly, Harrison cannot show appellate counsel performed deficiently for not raising a point on direct appeal alleging fundamental error.   *See, e.g.*, Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991) (explaining that claims of ineffective assistance of appellate counsel are governed by same standard as trial counsel under Strickland); Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining appellate "counsel need not brief issues reasonably considered without merit"), *superceded by statute on other grounds, see* Pinkney v. Sec'y, Dep't of Corr., 876 F.3d 1290, 1295 (11th Cir. 2017).   *See also, e.g.*, Kilgore v. State, 688 So. 2d 895, 898 (Fla. 1996) ("We have defined fundamental error as being error that 'reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" (quoting State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991))).   Moreover, as discussed in the analysis of Ground 4, *infra*, the State presented sufficient evidence at trial to support Harrison's

conviction.

Petitioner Harrison has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 4</u>:   State Court Error – Denial of JOA

In his fourth ground, Petitioner Harrison asserts the state trial court erred in denying the defense motion for JOA and the state appellate court erred in affirming the case and denying him habeas relief based on his claim of ineffective assistance of appellate counsel.   ECF No. 1 at 19. Harrison further asserts the State did not prove premeditation, no jury instructions should have been given on premeditation, and the jury's general verdict form was defective.  *Id*.

As with Ground 3, Respondent asserts Harrison did not exhaust this ground, to the extent he raised it in his Rule 3.850 motion, because he did not appeal the denial of that motion.   ECF No. 10 at 54-55.   Respondent further asserts that, to the extent he raises this ground as one alleging ineffective assistance of appellate counsel, Harrison raised that claim in the

habeas petition he filed in the First DCA, which that court denied on the

merits.   *Id*. at 54.

To the extent Harrison raises here a claim of state court error, he has

not exhausted such claim as it was not raised on direct appeal.   *See* Ex. D

(Initial Brief).   To the extent he raises claims of ineffective assistance of

trial and appellate counsel, such does not warrant relief.

In this case, after the State rested its case, defense counsel moved

for judgment of acquittal and the judge denied the motion, after hearing

argument from each side:

> MR. PAUL HAMLIN:   Your Honor, I move for a judgment
> of acquittal.   There has been absolutely [no] evidence as to
> premeditation.   So the count of premeditation first degree
> murder, the State has not met all the elements of that and the
> jury couldn't reach a conclusion of that.   I ask that
> premeditated on premeditated first degree murder, you gran[t] a
> judgment of acquittal.   I have further, but if you want –
>
> THE COURT:   Let's hear it.
>
> MR. PAUL HAMLIN:   Secondly, on robbery there is no
> evidence that anything of value was taken which is one of the
> elements of robbery and that hadn't been proven.
> Circumstantially an attempt – thee may be evidence of an
> attempt circumstantially but it is only circumstantial.   It is
> circumstantial.   And is not appropriate for the jury to make a
> decision.   I ask for a judgment of acquittal on the robbery and
> attempt as well.
>
> THE COURT:   Help me to remember.   Was there not a

statement by a witness that the Defendant said he got $70.

MS. JENSEN:   Eighty.

MR. PAUL HAMILIN:   One of the witnesses did say that, yes.

THE COURT:   Okay.   If I have to consider the evidence in the light most favorable to the State, it would seem as to the robbery that would solve that issue and I'll have to deny the judgment of acquittal.   As to premeditation.

MS. JENSEN:   Obviously as the Court is aware, premeditation is a killing after consciously deciding to do so.   In the light most favorable to the State, he was hiding in the back area of the Domino's lying in wait with a weapon.   Once the Domino's driver pulled up which happened to be Mr. Hinkle, the State's position is that he confronted or ambushed the victim. He stabbed him in the chest, not in the leg, not in the arm, but directly in the heart and the State feels that is injury that the victim received obviously was fatal.   Because the law doesn't require a fixed period just enough time to allow for reflection, the position Is that the Defendant hid, waited for an opportunity and ambushed one of the drivers, attacked him and killed him and that is enough for premeditation.

THE COURT:   Close on that.

MR. PAUL HAMLIN:   The State's presented contradictory theories.   One said his intent was to rob.   If his intent is to rob, there is no premeditated design to kill and there is no time for reflection as well.   So no premeditation, no time to reflect or intent to kill or design to kill.

THE COURT:   Okay.   Thank you.   At the close of the case, I must consider all the evidence in the light most favorable to the State.   Considering that, I will deny the motion at this time and anticipate a standard slightly different at the

conclusion of all of the evidence in the case and I'll have a
chance to revisit it at that time.

Ex. B at 165-67.   The judge revisited the issue after Harrison decided not

to testify and the defense had no witnesses, and the judge decided to

reserve jurisdiction pending the jury's decision:

     THE COURT:   At this time, I presume you want to renew
your motion?

     MR. PAUL HAMLIN:   Yes, sir.

     THE COURT:   If you have any authority, I would certainly
be delighted to see the authority that you might have on the first
issue that you raised in your motion.

     MR. PAUL HAMLIN:   No further authority other than what
I have argued.

     THE COURT:   State?

     MS. JENSEN:   The only other thing I would add if this
Defendant's attempt was simply to rob Tyler Hinkle, he could
have used the weapon as a threat.   He didn't actually have to
stab him if there was no attempt to commit murder.

     THE COURT:   Anything else on closing?

     MR. PAUL HAMLIN:   No, Your Honor.

     THE COURT:   The Court is quite frankly going to reserve
jurisdiction on ruling on this and I will invite authority at the
conclusion of the case depending upon the outcome of the
jury's decision.   I am going to let this issue go to the jury.
They'll have an opportunity to consider it, but in the absence of
the Court's having an opportunity under the specifics facts of

this case to possibly see some authority, I'm not comfortable at this time with the decision.   So I will invite the authority.   I'll receive that and you know, if the jury verdict comes back, it might resolve the problem without me having to do that, but if it comes back so that I need to address it then I will and I'll render a subsequent order on that particular issue.   But once the case is over, once the jury returns with a verdict, if it is needful for you to file authority then you can give me an idea of how much time you would like to do that in order for me to receive it, consider it and make a decision about it.   Okay.   Thank you so much.

*Id.* at 170-72.   Both sides submitted post-trial legal memoranda to the trial court regarding premeditated murder.   Ex. A at 99-104 (State's Memorandum of Law), 105-07 (Defendant's Memorandum on Judgment of Acquittal); *see* Ex. B at 215-18.   In an order rendered August 13, 2014, the court denied the JOA motion.   Ex. A at 111-12.

In Florida, "[t]he purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence, and where the State has brought forth competent evidence to support every element of the crime, a judgment of acquittal is not proper."   Anderson v. State, 504 So. 2d 1270, 1271 (Fla. 1st DCA 1986).   "When a defendant moves for judgment of acquittal, he admits all facts in evidence adduced and every conclusion favorable to the State reasonably inferable therefrom."   *Id.*   Similarly, when reviewing an insufficiency of the evidence claim in a habeas petition,

a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 918 (11th Cir.2009).   The court must assume the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution.   Jackson, 443 U.S. at 326; Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir.2001).

In this case, the record supports the state courts' rulings.   The parties stipulated the victim, Tyler Hinkle, died September 24, 2011, at Domino's Pizza.   Ex. A at 70; Ex. B at 29.   As explained above, particularly in the analysis of Ground 3, *supra*, Harrison was charged with, and convicted of, premeditated murder or murder while engaged in the perpetration or attempt to perpetrate a robbery.   Ex. A at 1-2.   The State presented sufficient evidence to sustain Harrison's conviction of first degree murder under either theory.

In particular, as to first degree premeditated murder, a Domino's employee testified that, on the evening of September 24, 2011, the victim entered the building and stated that he had "been stabbed in the parking

lot," before he fell on the floor.   Ex. B at 45-46.   Deputy Christian Coad, with the Escambia County Sheriff's Office, arrived shortly thereafter and asked the victim if he had been robbed, and the victim replied, "Yes."   *Id*. at 53.   Coad asked if the victim gave him any money, and the victim said, "Yes."   *Id*. at 53-54.   Coad asked if the attacker was a black or white person, and the victim replied, "Black."   *Id*. at 54.   The emergency medical personnel arrived and Coad went out to the parking lot; he observed "some blood splatter throughout the parking lot" and he "saw some footprints in the dirt that led behind Domino's."   *Id*.   Coad testified that by the time he left the scene, there were about 12 to 15 officers that had responded and were circling the immediate area.   *Id*.

The State presented the testimony of Dr. Andrea Minyard, the Chief Medical Examiner for District 1 in Florida, that the victim had a fatal stab wound on the left side of his chest, which was 5/8 inches in length, 5 inches deep, and consistent with a knife wound.   Ex. B at 30, 34, 37-38, 40. Dr. Minyard testified the victim weighed 143 pounds and was five feet six and a half inches tall.   *Id*. at 33.   Dr. Minyard testified the knife traveled through the muscles between the ribs, entered the right ventricle of the heart, went into the septum that separates the heart's ventricles, hit one of

the heart's valves, and finally went into the left atrium of the heart; in short, the knife penetrated the victim's heart and caused his death.   *Id*. at 38, 40.

The State also presented the testimony of a neighborhood resident, Bobby Peterson, who lived about a two-minute walk from the Domino's, had known Harrison for six or seven years, and knew Harrison's family all his life.   *Id*. at 57.   Peterson saw Harrison the night of the murder, on the same property where Peterson lived.   *Id*. at 58-59.   Harrison left and then "about 15 minutes later," Peterson saw Harrison running towards the house on the property where Peterson lived, from the direction of the Domino's. *Id*. at 60.   Peterson tried to stop Harrison from coming in the yard but "[h]e got around [Peterson] and went out the back gate."   *Id*. at 61.   About 15 or 20 minutes later, Peterson saw a helicopter searching the area.   *Id*. at 58, 61.   When an officer questioned Peterson about the person he saw running from the direction of the Domino's, Peterson picked the photo of Harrison out of a group of photos.   *Id*. at 62.

The State presented the testimony of another neighbor, Tony Cohens, who knows Harrison and remembered seeing police and helicopters in the area the night of the murder.   *Id*. at 67, 69.   Cohens testified he saw Harrison the night of the murder, before he saw the police

and helicopters.   *Id*. at 70.   He testified Harrison was running "like 200

miles an hour."   *Id*. at 71.   He testified Harrison was "[c]oming from toward

the Domino's Pizza going toward home."   *Id*. at 72.   When an officer

questioned Cohens about the person he saw running from the direction of

the Domino's, Cohens picked the photo of Harrison out of a group of

photos.   *Id*. at 73.   Cohens testified he saw Harrison "two to three weeks"

after the murder and Harrison told him:

> That I was the only one that seen him running from that
> direction and I was like well, I don't really want to talk about it.
> That is between you and God, you know.   You got to own up to
> it between you and him and he was like well, you the only one
> that seen me.   So I'm letting you know I just had to do what I
> had to do.

*Id*. at 76.

The State presented the testimony of Harrison's brother, Ashlyn

Harrison.   *Id*. at 119-20.   He testified:

Q.   Did you ask him [Gary Harrison] what happened?

A.   Yes, I asked him what happened and he said that he let me
know that the guy had got stuck with it was approximately by a
knife and he was the one that had did it and over like $80 for
some crack cocaine.

Q.   Did your brother say he stuck him?

A.   Yes, ma'am.

Q.   And who was him?   Did he say who he was talking about?

A.   The guy, the pizza guy.

*Id*. at 122.

Finally, the State presented the testimony of Jamil Tenon.   *Id*. at 129.

Tenon testified that, on the night of the murder, he "was located at the rear

of the building parking [his] car waiting on an acquaintance," to conduct a

drug transaction.   *Id*. at 131.   Tenon testified he did not know Harrison

personally but he knew him from the neighborhood.   *Id*. at 132.   He

testified about why he was waiting in this particular location:

> Because from the direction that I'm sitting in it is real difficult if
> even possible for the people who work there to see me sitting
> back there and like with the parking lot being vacant late at
> night other than the delivery people, you know, it looked kind of
> odd if I was parked out there in the parking lot and I wasn't
> there to by no pizza.   So I just kind of sit to the rear of the alley
> where you can see in the parking lot enough to cut the inside
> lights on my car or flash my headlights so that he'll know that I
> was there and for him to just pull out to follow me if I didn't want
> – if I didn't safe conducting right there.   If I saw people out in
> the parking lot or something.   I could just have him, you know,
> have him follow me to another location.

*Id*. at 133-34.   Tenon testified he saw a headlight and he believed it was

the car of a Domino's employee because "if they pull in on the sides more

than likely it is an employee if they pull in on the side of the building."   *Id*.

at 133, 134.   He then "checked back looking at the time on [his] phone to

see about ho long the last time that [he] had called the guy" he was

expecting to meet, and when he looked up, "it just looked to be nothing

more than just a little squirmish like a little scuffle or a little altercation

between the pizza dude and a person at the time just looked like a – I could

tell it was a black male." *Id*. at 134.   Tenon then grabbed his phone to call

the person he was expecting to meet to let him know he was switching

locations.   *Id*. at 135-36.   Tenon already had his car running, and as he

was turning on his headlights, he saw the person "come directly in [his] line

of sight."   *Id*. at 137.   At that point, Tenon got a good look at the person

and knew it was Harrison.   *Id*. at 137-38.

To convict Harrison of first degree premeditated murder, the State

had to prove, beyond a reasonable doubt:   (1) the victim is dead; (2) the

death was caused by the criminal act of Harrison; and (3) there was a

premeditated killing of the victim.   Fla. Std. Jury Instr. (Crim) 7.2;

§ 782.04(1)(a)1., Fla. Stat. (2010); *see* Ex. A at 73.   The parties stipulated

to the first element.   Testimony at trial, when considered together and in

the light most favorable to the prosecution, shows Harrison had an

altercation with the victim in the Domino's parking lot, when the victim had

just returned from a delivery.   The victim then went into the building and

stated he had been stabbed; the victim indicated to law enforcement that the perpetrator was black.   The victim died as a result of a 5-inch deep stab wound, which penetrated his heart.   Witnesses saw Harrison running through the neighborhood very fast from the direction of the Domino's toward Harrison's residence, the evening of the murder, before the appearance of law enforcement.

The main focus of the JOA motion in the trial court involved the third element, premeditation.   In Florida, premeditation is "more than a mere intent to kill; it is a fully formed conscious purpose to kill" and this purpose "may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act."   Oliver v. State, 214 So. 3d 606, 618 (Fla. 2017).   "Premeditation may be inferred from such facts as 'the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'"   Id. (quoting Bradley v. State, 787 So. 2d 732, 738 (Fla. 2001)).

Under Florida law, the nature and location of stab wounds, together with evidence of a robbery motive, can support a factual finding of

premeditation.    *See* <u>Rogers v. State</u>, 783 So. 2d 980, 989 (Fla. 2001)

(explaining "the deliberate nature of the two wounds in this case is

particularly compelling evidence of premeditation" where victim "died as a

result of two stab wounds, one to her chest and the other to her right

buttock" and "[t]he fatal wounds were 8.5 and 9 inches deep," with the

pathologist testifying "the instrument was inserted; then after an interval,

twisted and pulled out"; therefore, "the unusual nature of the two almost

identically shaped and inflicted knife wounds demonstrates that the victim

was carefully stabbed in a deliberate manner in order to effect her death");

<u>Perry v. State</u>, 801 So. 2d 78, 86 (Fla. 2001) ("Therefore, there is

competent, substantial evidence supporting the inference of premeditation

based upon the inconsistencies between the evidence presented and

Perry's account of the circumstances leading to the murder, the nature of

Johnston's injuries [where "'extensive' force was required for at least one

chest wound as the knife when through Johnston's chest bone, further

demonstrating that the victim was carefully stabbed in a deliberate manner

in order to effect death"], lack of evidence of provocation or hostility

between Perry and Johnston, and the existence of a plausible robbery

motive.").    Here, given the manner in which the homicide was committed

(in the dark, when the victim returned from deliveries) and the nature of the wound (a 5-inch deep wound, penetrating the victim's heart), the jury could reasonably conclude Harrison acted with premeditation.   Harrison did not simply try to threaten the victim with a knife or injure the victim in a non-lethal manner in order to rob the victim; rather, he acted with deliberate aim to a vital organ in order to effect death.   *See* Rogers, 783 So. 2d at 989 ("In addition to the deliberate nature of these stab wounds, other circumstances are present in this case that support a finding that the killing was the result of a preconceived plan.   The State's theory was that Rogers' primary motive in killing Cribbs was to steal her property, especially her vehicle.").

Moreover, as Respondent indicates, even if the evidence did not support premeditated murder, any error in instructing the jury on that theory is harmless because the evidence supports a conviction for felony murder, which was also charged.   *See, e.g.,* Crain, 894 So. 2d at 73 ("A general guilty verdict rendered by a jury instructed on both first-degree murder alternatives may be upheld on appeal where the evidence is sufficient to establish either felony murder or premeditation."); *see also, e.g.*, Jones v. State, 748 So. 2d 1012 (Fla. 1999) ("Even assuming that the evidence was

not sufficient to support premeditated murder, the evidence is certainly sufficient to support the finding that the defendant committed the murder while engaged in the commission of a robbery and kidnapping."); Mungin v. State, 689 So. 2d 1026, 1029-30 (Fla. 1995) (holding that although trial judge erred in denying JOA as to premeditation, reversal of first-degree murder conviction not warranted as judge correctly denied JOA on felony murder).

In particular, to convict Harrison of first degree felony murder, the State had to prove that (1) the victim is dead, (2) the death occurred as a consequence of and while the defendant was committing, or attempting to commit, robbery, and (3) the defendant was the person who killed the victim or the victim was killed by someone other than the defendant but the defendant and the other person were principals in the attempt to commit a robbery.   Fla. Std. Jury Instr. (Crim) 7.3; § 782.04(1)(a)2., Fla. Stat. (2010); *see* Ex. A at 75.   The Florida Statutes define "robbery" as "the taking of money or other property . . . from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat.

(2010).

The State presented sufficient evidence to support each element of first degree felony murder.    As explained above, the parties stipulated as to the first element.    The State presented evidence the death occurred as a consequence of and while Harrison robbed, or attempted to rob, the victim, and Harrison was the person who killed the victim.    Deputy Coad testified the victim indicated he had been robbed and gave the robber money.    Harrison's brother testified that Harrison told him Harrison had stabbed "the pizza guy" for "like $80."

Based on the foregoing, a rational trier of fact could have found Harrison guilty of first degree felony murder.    The trial court properly denied the motion for judgment of acquittal, and appellate counsel did not perform deficiently by not raising this as a point on appeal.

Petitioner Harrison has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.    *See* 28 U.S.C. § 2254(d)(1)-(2).    This ground should be denied.

## **Conclusion**

Petitioner Gary Harrison is not entitled to federal habeas relief.    The

§ 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 4, 2019.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**